## Blossom *v.* Ball.

CONTRACT.— *Construction of.*—*Pleading.*—Suit by a widow, on a written contract, executed in the lifetime of her deceased husband, providing that, in consideration of the conveyance of certain lands by said husband to the defendant, the latter should provide for and maintain the plaintiff and her said husband in a suitable and becoming manner during their natural lives; that as long as said husband might desire to keep house, he should use his household furniture and other property for his comfort and for the purpose of assisting defendant in their maintenance; that after the death of both said husband and wife, the personal property then belonging to either should be defendant's, except certain ·articles specified, which should go to two other persons named, to whom defendant should deliver said articles on the death of both said husband and wife. The complaint alleged, that said agreement was made by the plaintiff and her said husband with the defendant, and was lost. The copy filed with the complaint purported, in the body of it, to be an agreement between the defendant and said husband, but purported to have been signed by the plaintiff and defendant only. Breach assigned, the failure of the defendant to provide for and maintain the plaintiff for a certain period, since the death of her said husband, to the plaintiff's damage, &c. Suit, also, for wrongful conversion of certain personal property referred to in said agreement.

*Held*, on demurrer, that the allegations of the complaint were controlled by the copy filed therewith, but that there was nothing in the breach alleged making it essential that the contract should have been signed by said husband.

*Held*, also, that on the death of said husband, his wife surviving, the personal property mentioned in said contract did not become the property of the defendant or subject to administration.

VARIANCE.—*Amendment.*—A copy of the contract admitted in evidence purported to have been signed by said husband and the defendant.

*Held*, that the variance was not material, and the complaint might have been amended, on the trial, by the copy in evidence; and that such amendment would be deemed by this court as having been made.

APPEAL from the Adams Circuit Court.

Suit by Sarah Ball, the widow of Vachael Ball, deceased, on a written agreement, executed in the lifetime of said decedent.

The agreement, or contract, was made in March, 1862, between "Blossom, of the first part, and Vachael Ball, of the second part," and recites, that Vachael Ball had conveyed to Blossom certain lands, which are described, being the farm on which Ball resided. In consideration of which, Blossom agreed to make certain payments, which are particularly specified; and then the agreement contains this provision: "And it is further agreed by the said Blossom that he will provide for and maintain the said Ball and his wife Sarah, in a suitable and becoming manner, during their natural lives. And as long as said Vachael may desire to keep house; the said Ball is to use his household furniture and other property for his comfort, and for the purpose of assisting said Blossom in their maintenance. And after the death of both Vachael and his wife, what may remain of personal property shall be Blossom's, except one cow and bed and bedding. One bureau is to be the property of Sarah Lister; and one cow, one bed and bedding, and side-saddle are to go to Susannah Lister, at the death of both Vachael and wife. And the above personal property the said Blossom is to hand over to said Sarah and Susannah Lister, after the death of both Vachael and wife, if any such property exists. All other property to be said Blos-

som's that may belong to either at the time of their death."

The complaint originally consisted of three paragraphs. The first and second were on the written agreement. The second, being the same in substance as the first, was stricken out.

It is alleged in the first paragraph, that the agreement was made by Vachael and Sarah Ball with the defendant Blossom; that the original is lost and cannot, therefore, be produced, but an alleged copy of it is filed with the complaint. The copy of the agreement filed purports, in the body of it, to be an agreement between Blossom, of the first part, and Vachael Ball, of the second part; but it purports to have been signed by Blossom and Sarah Ball only.

It is also alleged, that Vachael Ball died in July, 1862. The breach complained of is, that Blossom had wholly failed to provide for and maintain the said Sarah, in a suitable and becoming manner, or in any manner whatever, from the 1st of September, 1862, until the commencement of the suit; that she was old and feeble, and during much of the time was sick and diseased, and necessarily had to incur a large expense in her support and maintenance, and for attendance and medical aid, all of which the defendant neglected and refused to pay, to her damage fifteen hundred dollars, for which judgment is demanded.

The third paragraph is for the wrongful conversion by the defendant of certain personal property to his own use, for which judgment is claimed for two hundred dollars.

A demurrer was filed to each paragraph of the complaint, for the want of sufficient facts to constitute a cause of action. The demurrers were overruled, to which the defendant excepted.

An answer was then filed, consisting of several paragraphs. The first is a general denial to both paragraphs of the complaint. The second, third, fourth, and fifth paragraphs are directed to the first paragraph of the complaint, and allege, in various forms, that the defendant was ready and willing to maintain and provide for the plaintiff in all

things according to the terms and spirit of said contract, at his own house, she being too aged and feeble after the death of her husband to keep house; but that she refused to live with him, or to receive such support from him. The sixth and seventh paragraphs are directed to the third paragraph of the complaint. The sixth alleges, that the personal property named, on the death of Vachael Ball, became the property of the defendant, and he converted the same to his own use, as he might lawfully do. The seventh paragraph alleges, that the wheat claimed by the plaintiff in the third paragraph of the complaint was from the crop growing on the farm at the date of the conveyance thereof by Vachael Ball and the plaintiff to him, and became his by virtue of said conveyance.

Reply, in denial of all the special paragraphs.

A jury being waived, the cause was tried by the court. There was a finding for the plaintiff in the sum of nine hundred and thirty-one dollars and fifty cents in damages. A motion for a new trial and a motion in arrest of judgment were severally made and overruled, to which proper exceptions were taken by the defendant. Judgment on the finding.

The evidence is made a part of the record.

ELLIOTT, J.—Several objections are urged by the appellant to the proceedings in the circuit court, which will be considered substantially in the order in which they are presented in the appellant's brief.

1. It is claimed that the court erred in overruling the demurrer to the first paragraph of the complaint. The objection urged to the complaint is, that it alleges that the contract was made by the plaintiff and her husband with the appellant, whilst by the copy filed with the complaint it appears to have been signed only by the plaintiff and the appellant. There is nothing in the breach alleged in the complaint making it essential that the contract should have been signed by Vachael Ball. It was signed by the appel-

lant, and contains a recital that Vachael Ball had conveyed
to him the land therein described, and the agreement of the
appellant that, in consideration thereof, he would support
both Vachael and his wife, the plaintiff, during their natu-
ral lives.    The agreement, if signed by the appellant alone,
would have been binding on him.    It inured to the benefit
of the plaintiff and after the death of her husband gave
her a right of action for its breach in failing to maintain
her.    The allegations in the complaint would be controlled
by the copy furnished, and as a question of pleading, upon
demurrer, the contract is presumed to have been signed by
Sarah Ball and the appellant, and the complaint was, there-
fore, sufficient.    But it may be remarked in this connection,
that, as the body of the contract purports to be an agree-
ment between Vachael Ball, and the appellant, there was
probably an error in copying the signatures, by which "Sa-
rah" was substituted for "Vachael."

2. On the trial of the cause, the plaintiff below was per-
mitted to prove, over the appellant's objection, in support
of the third paragraph of the complaint, that soon after the
death of Vachael Ball the appellant took and converted to
his own use certain articles of personal property owned by
said Vachael at the time of his death and referred to in
the agreement with the appellant.    It is insisted, that the
court erred in admitting the evidence.    Its admission is
objected to, first, on the claim that, by the written agree-
ment, the property referred to, on the death of Vachael
Ball, became the absolute property of the appellant, and,
therefore, the conversion of it by him did not create a cause
of action in favor of the appellee; and second, that if the
appellant was not entitled to the property, under the agree-
ment, at Vachael's death, it remained the property of his
estate, and could only be recovered by his personal repre-
sentative.

The claim that the property vested in the appellant, un-
der the agreement, upon the death of Vachael Ball, his wife

still surviving, is not supported by the language of that instrument. The provision contained in the agreement in relation to the personal property is this: "And after the death of both *Vachael and wife, what may remain of personal property* shall be Blossom's."

Nor do we think that such personal property became the subject of administration on the death of Vachael. It seems evident that it was the intention of the parties that the personal property referred to in the agreement should be appropriated to the use of Ball and his wife, in such manner as they might deem proper, to aid in their comfort and support, during their respective lives, and if at the death of the survivor any portion of it might remain, it should vest in the appellant. After the death of Vachael, the appellant was still bound for the support of the wife, and was entitled under the agreement to have the property so used as to aid him in her support; and hence it would not go to the administrator of Vachael.

3. The court permitted the plaintiff to read in evidence, on the trial, over the appellant's objection, a copy of the contract referred to in the first paragraph of the complaint, the original being lost. This ruling is also claimed to be erroneous. The admission of the copy was objected to on the ground that there was not sufficient evidence of the loss of the original. We have examined the evidence as to its loss, and think it is clearly sufficient to justify the admission of the copy. It was also objected to on the ground of a variance between the copy offered in evidence and the one filed with the complaint. The variance consisted in the fact that the copy offered in evidence purports that the original was signed by Vachael Ball and the appellant, whilst the copy filed with the complaint contains the name of Sarah, instead of Vachael, Ball at the place of signature. It was not controverted that the one offered in evidence was a true copy of the original. The error was evidently in the copy filed with the complaint. The complaint and the copy of the agreement might have been amended on the

trial (2 G. & H. 114, secs. 94, 95), so as to correspond with the copy given in evidence. The variance was not of such a character as to mislead the appellant in his defense on the merits, and the amendment will be deemed by this court as having been made.

4. It appears by a bill of exceptions that during the trial the appellant offered to prove that the appellee, soon after the death of her husband, and about the time she went to live with Justin Mann, commenced a suit in the Adams Circuit Court against the appellant, to rescind the contract, and for the recovery of the land, which she continued to prosecute for several years. But the court rejected the evidence, to which the appellant excepted.

It is claimed that the evidence offered was legitimate (in connection with other evidence adduced, that the appellee refused to live with the appellant and resided with Mann, another son-in-law), as tending to show that the appellee, and not the appellant, violated the contract. The fact that such a suit was instituted would not, of itself, necessarily tend to prove a violation or abandonment of the contract by the appellee. It does not appear that the appellant offered in evidence the record of the suit referred to, which would be the best evidence of its nature and object; and for aught that appears from the facts offered to be proved, the suit may have been founded on an alleged violation and abandonment of the contract on the part of the appellant, and if so, it would not, in any way, tend to support the issues in this case, or be of any benefit to the appellant. We think that the evidence was properly excluded.

5. The next question presented is, that the finding of the court is not sustained by the evidence. A careful examination of the evidence has been made, and from it we find that it appears, conclusively, that the appellee, after the death of her husband, in August, 1862, by reason of her age and feeble condition, could not longer keep house. She was often sick and confined to her bed, and needed the almost constant care and personal attention of some one;

and hence it was highly proper, if not essentially necessary, that she should become the inmate of a family, where she would be properly cared for, at all times, and nursed when sick.

It also appears that the appellant was at all times willing to take her to his own house and there provide for and support her, where she would be cared for and nursed by her daughter, the appellant being her son-in-law, and often requested her to go there and reside, but she refused to do so, preferring to make her home with her son-in-law Mann, between whom and the appellant there was no very kind feeling.

The agreement bound the appellant to "provide for and maintain" Ball and his wife, "in a suitable and becoming manner, during their natural lives." The obligation for such maintenance commenced at the date of the agreement, and yet it contemplated that they would continue, for some time, to keep house; and the evidence shows that they continued to live in the house, on the farm conveyed to the appellant, until the death of the husband. But the agreement is silent as to where they should reside and receive the support provided for, after they ceased to keep house. It binds the appellant to maintain and provide for the appellee in a suitable manner, but it does not require that he should take her to his own house to reside, or that she should necessarily go there to receive her support or be deprived of it. A provision for her support in a suitable family, where she would be properly nursed and cared for by those not obnoxious to her, would comply with the agreement. And so, if the appellant made such provision at his own house, and if it was a suitable and proper place for her to reside, and she could have lived there in harmony, and would there have received the proper care and attention and had all her reasonable wants supplied, it was her duty to make that her home; and if she refused to do so, without cause, and voluntarily went elsewhere to live, the appellant would not be liable for her board and personal care during such absence.

It would be otherwise, however, as to her clothing and necessary expenses for medical services when sick.

The suit covers a period of five years, during which the appellee lived at Mann's. The appellant, during that time, gave her ten dollars in money and furnished her a few small articles, not amounting in value to ten dollars. It is insisted, on the part of the appellee, that the appellant's house was not a proper place for her to reside, and that owing to his ill temper and harsh language to her personally, and to frequent quarrels and disagreements among the members of his family, she could not live there in peace, or with any reasonable degree of comfort. The evidence on this subject is very conflicting, and would, without violence to it, justify a finding either way.

The finding was for the appellee, and we would not be justified in disturbing it.

6. The only remaining objection to the finding is, that the damages are excessive. We do not think so. The amount is less than one thousand dollars for the appellee's support and maintenance for five years, allowing nothing for the use of the personal property covered by the third paragraph of the complaint. This is less than two hundred dollars a year for the appellee's support, including board, clothing, and personal care and attention; which, in view of her feeble condition, we think, is quite moderate, and is fully justified by the evidence.

The judgment is affirmed, with costs.

*D. Studabaker,* for appellant.

*J. R. Bobo, J. E. McDonald, A. L. Roache,* and *E. M. McDonald,* for appellee.